M9F5graS

```
1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,              New York, N.Y.

4              v.                          16 Cr. 324 (ALC)

5   EFRAIN GRANADOS CORONA,

6              Defendant.

7   ------------------------------x

8                                         September 15, 2022
                                          11:40 a.m.
9

10  Before:

11              HON. ANDREW L. CARTER, JR. ,

12                                        U.S. District Judge

13

14                      APPEARANCES

15  DAMIAN WILLIAMS
        United States Attorney for the
16      Southern District of New York
    BY:  JACQUELINE KELLY
17       ELINOR TARLOW
         Assistant United States Attorneys
18
    MOSKOWITZ & BOOK
19      Attorneys for Defendant
    BY:  AVRAHAM C. MOSKOWITZ
20
    ALSO PRESENT:  ERIKA DE LOS RÍOS, Spanish Interpreter
21                 MARCIA GOTLER, Spanish Interpreter

22

23

24

25
```

M9F5graS

1          (Case called)

2          THE DEPUTY CLERK:  Counsel, please state your

3    appearances for the government.

4          MS. KELLY:  Good morning, your Honor.  Jacqueline

5    Kelly and Elinor Tarlow for the government.

6          THE DEPUTY CLERK:  And for the defendant?

7          MR. MOSKOWITZ:  Good morning, your Honor.  Avi

8    Moskowitz on behalf of Mr. Granados Corona, who is seated to my

9    left.

10          THE COURT:  Good morning.

11          Mr. Granados Corona.

12          THE DEFENDANT:  Good morning.

13          THE COURT:  We are here today to impose sentence in

14    the case of United States v. Efrain Granados Corona.  In

15    preparation for today's proceedings I have reviewed the

16    presentence report, several submissions by the defense, as well

17    as a sentencing submission by the government, victim impact

18    statements from two victims, a proposed order of restitution,

19    as well as a notice of intent to request judicial removal, the

20    factual allegations in support and additional removal order of

21    judicial removal.

22          Is there anything else I should have from the

23    government?

24          MS. KELLY:  No, your Honor.

25          THE COURT:  Anything else on behalf of the defense?

M9F5graS

1          MR. MOSKOWITZ:  No, your Honor.

2          THE COURT:  To the extent I haven't already done so, I

3     accept Mr. Granados Corona's plea of guilty.

4          Mr. Granados Corona, have you reviewed the presentence

5     report with your attorney?

6          THE DEFENDANT:  Yes.

7          THE COURT:  And defense counsel, have you in fact

8     reviewed the presentence report with your client?

9          MR. MOSKOWITZ:  Yes, your Honor; with the assistance

10    of an interpreter.

11         THE COURT:  And counsel for the government, have you

12    reviewed the presentence report?

13         MS. KELLY:  Yes, your Honor.

14         THE COURT:  Any objections to anything in the

15    presentence report by the defense?

16         MR. MOSKOWITZ:  No, your Honor.

17         THE COURT:  By the government?

18         MS. KELLY:  No.

19         THE COURT:  Then I adopt the factual findings in the

20    presentence report.  Although I am no longer required to

21    strictly adhere to the sentencing guidelines, I must consider

22    the applicable guideline range when imposing sentence.  The

23    presentence report sets forth a guideline range of 235 to 293

24    months based on a total offense level of 38, Criminal History

25    Category I.  I will note that there is also a 15-year mandatory

M9F5graS

1    minimum.

2              Any objection to that calculation by the government?

3              MS. KELLY:  No, your Honor.

4              THE COURT:  By the defense?

5              MR. MOSKOWITZ:  No, your Honor.

6              THE COURT:  Then I find that the guideline range is

7    235 to 293 months.

8              I will hear from the parties regarding any issues they

9    want to raise about the appropriate sentence, starting with

10   defense counsel.

11             MR. MOSKOWITZ:  Thank you, your Honor.  May I take the

12   podium?

13             THE COURT:  Yes.

14             MR. MOSKOWITZ:  Judge, I'm going to begin by stating

15   the obvious.  It is a serious case.  The criminal conduct here

16   was terrible.  There is no excuse for the conduct.  And,

17   clearly, from the nature of the plea and the mandatory minimum,

18   a significant sentence is appropriate and is going to be given,

19   but I would suggest to the Court that a 15-year sentence is

20   sufficient and not greater than necessary to accomplish the

21   goals of 3553(a) and I begin by saying -- look -- for those of

22   us who do this for a living and are in court all the time, we

23   lose track, sometimes, and lose perspective on how long 15

24   years is and an extremely large amount of time to spend in

25   prison.  I have tried to articulate in my letter to the Court

M9F5graS

it is particularly a long period of time given the conditions

that Mr. Granados Corona has experienced since his arrest in

2016, first in a Mexican prison -- and your Honor is well aware

of conditions there just from reading newspapers and general

knowledge, and then the conditions over the last three years or

two and a half years here in the United States during COVID.

Mr. Granados Corona was initially at the MCC and then at

Westchester County Jail in conditions that have been difficult,

very harsh, and at the MCC they were so bad they closed the

place down.  That's all that really needs to be said but I went

into some length describing some of those conditions, and the

courts in this district and in the Eastern District have

realized, and your Honor has realized, that the conditions

there were worse than they should have been and are deserving

of some consideration at the time of sentencing.

　　　With respect to the 3553(a) factors, first, just

focusing on Mr. Granados Corona and his background, as I said,

without -- I wouldn't even try to minimize the conduct but I

think I tried in my letter to put Mr. Granados Corona's

involvement in the case in some perspective for the Court given

where he grew up, and his family.

　　　Mr. Granados Corona grew up in Tlaxcala -- I think I

got that right -- where the sex trafficking business is

rampant.  It is an area of extreme poverty.

Mr. Granados Corona grew up in extreme poverty and he had

M9F5graS

1    family members who were already in the business who brought him

2    in.  That is not in any way to excuse the behavior, but it

3    certainly gives certain perspective as to how he got into the

4    business in the first place.

5        With respect to the issue of punishment, clearly, 15

6    years is a significant period of time and it is substantially

7    more than your Honor has imposed on the co-defendants in this

8    case so far.  I have given the Court, in my letter, the

9    statistics on that but, as I believe, if I am not mistaken, so

10   far the longest sentence has been 137 months and even with the

11   "more serious conduct" that Mr. Granados Corona was involved

12   in, a sentence of 180 months was substantially more and more

13   than enough to take into account the additional, more serious

14   conduct, particularly when one considers the conditions under

15   which that time is being served and will continue to be served.

16       With respect to the issues of deterrence, both

17   specific deterrence and general deterrence, Mr. Granados Corona

18   has basically been out of the business for a decade since back

19   in Mexico.  He is at an age where recidivism decreases.  He is

20   going to be deported and not come back to this country, and so

21   15 years is more than enough to accomplishes the specific

22   deterrence of Mr. Granados Corona.

23       As for general deterrence, Judge, what I would suggest

24   is anybody who can actually be deterred would think that 15

25   years in prison is a sufficient time to consider in terms of

M9F5graS

1    deciding whether or not this behavior or its conduct should be

2    risked, and certainly anybody who is aware of the conditions

3    under which Mr. Granados Corona has served would say I'm not

4    going to do what he did and serve time like he has served.

5            So, I think that the goals and objectives of 3553(a)

6    can be accomplished with a mandatory minimum sentence of 15

7    years and I would ask the Court to impose that.

8            Thank you.

9            THE COURT:  Let me just ask defense counsel this.  You

10   have talked about the fact that Mr. Granados Corona' conduct is

11   more egregious than that of the co-defendants and I certainly

12   agree with that, but it is not simply that he engaged in more

13   violent acts in terms of controlling these victims, but also

14   the information in the presentence report that he trained

15   others in ways to conduct this sex trafficking organization.

16           What do you have to say about that?  How should I

17   consider that?

18           MR. MOSKOWITZ:  Judge, look.  I was not in the case

19   from the beginning, I did not litigate any of those issues, nor

20   do I think I would want to.  Mr. Granados Corona was in the

21   business and just like somebody trained him as to what to do,

22   he, as he stayed in the business, other people came in and he

23   explained to them how it worked.  There is no excuse for it, it

24   is just a simple fact, that's the way the business worked.

25   Your Honor can take that into consideration, obviously, but it

M9F5graS

1    is the nature of the business and not something unique to

2    Mr. Granados Corona.  When you are in the business long enough

3    there are going to be younger people who come in behind you and

4    they're going to ask the counsel of somebody who has been in

5    this longer just as he did when he first got in the business.

6              Again, that is not to minimize it or excuse it, it is

7    just the nature of the business.

8              THE COURT:  OK.  Thank you.

9              I will hear from the government.

10             MS. KELLY:  Your Honor, I want to start by

11   acknowledging one of the victims of the defendant who is here

12   today.  She is identified as Victim 10 in the indictment and in

13   the presentence report, and with the Court's permission, she

14   would like to speak.  I am happy to have her speak now or at

15   the conclusion of my remarks.

16             THE COURT:  Let's go ahead and let her speak now.

17             MS. KELLY:  And, your Honor, would it be permissible

18   for her to speak from the witness stand?  She is more

19   comfortable with a little bit more distance from the defendant.

20             THE COURT:  That's fine.  She doesn't have do that,

21   but if she would like to do that, that's fine.  She can speak

22   at the witness stand or she can go to the podium, or we could

23   bring a microphone to her where she is right now, she wouldn't

24   have to move.

25             MS. KELLY:  Your Honor, she would prefer to go to the

M9F5graS

1  witness stand so I'm going to escort her there.

2         INTERPRETER:  May the interpreter have a brief word

3  with the witness?  We haven't spoken yet.

4         THE COURT:  Whenever you are ready you can just go

5  ahead and speak.

6         VICTIM 10:  Good afternoon, to everyone, and thank

7  you, your Honor, for giving me this opportunity.

8         My name is Rosa Ramirez Rosales and I am here today

9  because I wanted the Court to hear from me about the extreme

10  abuse I suffered at the hands of Efrain Granados Corona.

11         MR. MOSKOWITZ:  Judge, I'm sorry.  I could not hear

12  the translation.

13         THE COURT:  Hold on just a second.  She stated her

14  name and indicated she is here today to talk about the extreme

15  abuse that she suffered at the hands of Efrain Granados Corona.

16         I don't know if it is necessary for her name to be on

17  the transcript, I don't think she needs to repeat that, but

18  that is what she said.  That is my recollection of what she

19  just said.

20         Let me ask the interpreter to make sure that you use

21  the cordless microphone.  We will ask the interpreter to use

22  the coreless microphone so everyone can hear the

23  interpretation.

24         INTERPRETER:  Yes, your Honor.

25         MR. MOSKOWITZ:  Thank you, Judge.

M9F5graS

1        INTERPRETER:  I'm sorry, your Honor.  Did you want the

2    witness to start over or just continue?

3        THE COURT:  Continue.

4        VICTIM 10:  I was a victim of sex trafficking and

5    forced prostitution because of Efrain.  I met Efrain for the

6    first time when I was 16 years old at a festival in my

7    hometown, Puebla, Mexico.  I had a very difficult and traumatic

8    childhood.  My father abandoned us when I was young only to

9    return unexpectedly -- let's see, there is something missing

10   here.

11        Well, when I was 16 years old at a festival in my

12   hometown Puebla, I had a very difficult and traumatic

13   childhood.  My father abandoned us when I was young, only to

14   return unexpectedly years later.  When he returned, he

15   physically and sexually assaulted my mother.

16        INTERPRETER:  Interpreter's correction --

17        My father suffered from depression and would neglect

18   all of us and physically beat my brothers and he would also

19   beat me.  He suffered from drug addiction.  I only attended

20   school for two years and then started working at the age of 8.

21   All of this made me vulnerable to trusting Efrain and I now

22   believe he may have used me because he knew I was vulnerable.

23        He met me and spent time with me in Puebla over the

24   course of approximately eight weeks, during which time he began

25   telling me that I deserved something better in life and that he

M9F5graS

could get me a job with his family's company that sold Mexican

products in the United States.  He told me that his family

would help me procure a visa.  I realized later on that all of

this was a lie.  Despite wanting to have a better life in the

United States and despite his persistence, I resisted and

stayed with my family.  But then, about two months later, I got

into an argument at home that escalated to physical abuse, and

then I called Efrain and agreed to go with him to the United

States.  That decision claimed the course of my life and the

phone call I made to Efrain haunts me to this day.

        The night I left home, Efrain raped me.  After a

couple of days he told me that he owed people money and that I

could help him with his debts by being an escort.  When I

refused, he physically abused me and then he locked me up in a

room for two days without food.  When he let me out of the room

he took me, against my will, to Mexico City.  When I protested,

he beat me and threatened to harm my family.

        For about five months he forced me to work as a

prostitute in Mexico City which was a strange and unfamiliar

place for me.  Efrain forced me to work 17 to 18 hours a day

performing sexual acts on up to eight men per day, even during

my menstrual cycle.  During this time, Efrain was physically

and emotionally abused me.  I remember some actions in

particular when he beat me and kicked me all around the room to

the point where I couldn't breathe.  I tried to get away from

M9F5graS

his brutal attacks but he grabbed me by the hair and he

forcefully dragged me around the room.  He laughed at me while

he was attacking me and he mocked me by saying that I was so

bloody that I looked like Jesus Christ.  Once he stopped

beating me and left me to suffer through my injuries, I went to

the bathroom and had a heavy discharge which I believe was a

termination of my pregnancy as I was late on my menstrual

cycle.  These are only a few examples of the barbaric behavior

I was subjected to for years and years before I could finally

escape from Efrain.

        After approximately five months in Mexico City, Efrain

made arrangements for me to be smuggled across the border to

the United States.  After two attempts to smuggle me across the

border, I was transported into the United States without being

detected by border agents in June 2008.  I was taken across to

the other side of the border in Arizona with the help of

coyotes.  These are people who take other people across the

border in exchange for a fee.

        After walking for days, I found out that Efrain had

arranged for a van to take me from Arizona to Tennessee, and

then finally to Queens.  They made arrangements for me to start

working as a prostitute in order to repay the day after I

arrived in New York what Efrain described as a debt that I owed

to him.  Over the next three years my life was a living

nightmare.  I was forced to work nearly every day performing

M9F5graS

sexual acts on many men every day.  Initially Efrain's

associates would take me to the clients but I was also later

made to work at brothels located in Brooklyn, Queens,

Manhattan, and Yonkers.  I was occasionally sent on temporary

assignments to see clients in other states including in

Pennsylvania, Massachusetts, and the Washington, D.C. area.  At

the houses of prostitution, there were usually between five and

10 men on site overseeing and managing the operation.  I would

typically arrive at a house in the morning between 8:00 a.m.

and 11:00 a.m. and work until 8:00 p.m. or 9:00 p.m., sometimes

seeing as many as 30 to 60 clients per day.  On the busiest

days I would make between $1,000 and $1,200.  I was forced to

give the money to Efrain and his associates and I was not

allowed to keep any of it for myself.  As a matter of fact,

when Efrain was away from New York City, I was asked to send

the money I received in exchange for sex sometimes by using a

money transfer service.  I could not hide or underreport the

money that I earned because Efrain's associates, who ran the

houses of prostitution, would let Efrain know how much money to

expect.  Efrain would come and go to New York but when he was

in New York, he would physically and sexually assault me often

and on a daily basis.  When I would return from work, he would

follow me into the shower and search my body while I was there

to make sure that I was not hiding any money.

          During this time, Efrain told me repeatedly that it

M9F5graS

1    would be useless to try to escape since I spoke no English and

2    had no legal documents to work in the United States.  He also

3    told me that if I escaped, he would find me and shoot at me.

4    He instructed me that if I was ever arrested or questioned by

5    law enforcement, I should lie and say that I had a sick child

6    in Mexico and that I was working independently as a prostitute

7    to provide for the child.

8            I never wanted to be a prostitute.  And I hated having

9    to perform sexual acts for money.  I was humiliated and treated

10   worse than an animal in the years that Efrain forced me to work

11   as a prostitute.  I felt trapped without any hope for a better

12   life.  Even today, due to the years of abuse I have suffered, I

13   still have many physical and mental health issues for which I

14   have been receiving treatment.  I am grateful that the Justice

15   Department has found Efrain and I hope that he will not be able

16   to do what he did to me to any other women.  I hope that his

17   punishment sends a strong message to people like Efrain that

18   they will ultimately pay a very high price for trafficking

19   women.  For these reasons, I ask that you give Efrain the

20   maximum sentence allowed.

21           Thank you all very much.  And, there is something else

22   I want to say.  I believe in justice, it's in your hands, and I

23   know that you will do justice as should be done.  And all of us

24   victims are one and I hope this will some day be over with.

25   I'm the one who is here but all of us victims are as one.  I

M9F5graS

1    hope that he stays a prisoner for the rest of his days and that

2    he knows that what he did was no good.  I'm sorry, but I'm very

3    nervous and I hope that justice is done to him, the maximum.

4              THE COURT:  OK.  Thank you.

5              OK.  Go ahead, counsel for the government.

6              MS. KELLY:  Thank you, your Honor.

7              Your Honor has now presided over five additional

8    sentencings in this case and I know that you are well familiar

9    with the organization charged in the indictment and how it

10   operated.  We have previewed the defendant here today, his role

11   in some of those prior sentencings.  To be clear, the

12   defendant, Efrain Granados Corona, was the leader of that

13   organization, and so in many ways it is fitting that this is

14   the last of the sentencings because much of what we have

15   discussed before leads back to the defendant.  He is the lead

16   defendant in this case, he is the only defendant to plead

17   guilty to a 15-year mandatory minimum sentence.

18             Despite the suggestion in the defendant's sentencing

19   submission, the defendant was not brought into the organization

20   here by his nephew or anyone else, he was its head, he trained

21   his nephew and many others.  He mocked and reprimanded the

22   other traffickers when they weren't strict enough with their

23   victims and when they weren't willing enough to mete out

24   violence in response to perceived indiscretions.  He organized

25   driving delivery services, he had connections to brothels here

M9F5graS

1   in New York and all down the east coast.

2           The defendant was no guileless follower.  He was a

3   violent, broodish trafficker who constructed and ruled over a

4   web of Tenancingo and New York-based traffickers.  He had ties

5   to traffickers throughout New York and other cities and his

6   victims were absolutely terrified of him, something that comes

7   through clearly in the impact statements submitted and I want

8   to make one note here about the statement we just heard in

9   court, which is really a testament to the bravery of Victim 10

10  speaking here today which was, clearly, no easy task.

11          All of the defendant's victims were led by the same

12  script, a script written by Efrain Granados Corona.  They

13  became involved with him personally under the guise of a

14  relationship and then they were quickly forced into sexual

15  slavery.  When they disobeyed or even suggested the possibility

16  of disobeying, sometimes when they didn't do anything at all,

17  they were violently beaten, searched in the shower for hidden

18  cash, forced into losing pregnancies.  One victim held at

19  gunpoint, another beaten brutally with a belt.  All were raped.

20          Your Honor, that is power.  That is control.  That is

21  the definition of what it means to traffic by force, fraud, and

22  coercion.  The defendant speaks benignly of committing a

23  mistake in his written statement submitted to the Court.  That

24  statement is an insult to the victims here because far from an

25  isolated aberration, the defendant's conduct was pervasive, it

M9F5graS

took course over the duration of many years, almost 20, and it was reprehensible in every respect.

Now, the guidelines here, as noted by defense counsel, are quite high, and the government does not make this statement lightly but respectfully:  The mandatory minimum sentence here, 180 months, that sentence is not sufficient.  That sentence is not even as long as the duration of the criminal conduct charged in this case, the defendant's criminal conduct, and it certainly does not come close to the duration of the impact of the defendant's crimes which are, clearly, life-long.  The victims of these crimes are today not over what they went through.  They will be dealing with them for the rest of their lives.

Finally, I want to speak briefly about specific deterrence.  One thing that struck the government from the defendant's submission was the discussion about how pervasive trafficking is in the area of Mexico from which the defendant came.  That is all true, Tenancingo is a hub of sex trafficking.  Many, many people who have resided in Tenancingo and who have illegally come into the United States are engaged in illegal sex trafficking.  However, the government does not consider that to be a mitigating circumstance, rather it underscores the need for specific deterrence here.  The defendant is a businessman, a good one.  He practiced the business of commercial sex by force for many years.  That is

M9F5graS

1    essentially the only business he knows.  And defense counsel is

2    correct that at the end of the defendant's sentence he will

3    return to Mexico.  What the government is concerned about is

4    that he will immediately go back into the business that he did

5    so well, the business that everyone around him, the people he

6    trained, his relatives, that they are also engaged in.

7    Preventing future harm is a real concern in this case, just as

8    important as justice for the harm that's already been committed

9    by the defendant.

10            For all of those reasons, the government respectfully

11    submits that a guideline sentence here is not an overreach, it

12    is appropriate, it reflects the extreme seriousness of the

13    defendant's crimes and his role in the organization and in the

14    conduct charged.

15            Unless your Honor has further questions, we will rest

16    on our submission.

17            THE COURT:  Let me ask this question.  It is clear

18    that the conduct here is egregious.  The criminal justice

19    system, however, is supposed to treat those in its care much

20    better than leaders of sex trafficking organizations or drug

21    trafficking organizations or people who have been involved in

22    crime.  The conditions of confinement that the defendant has

23    endured at the MCC, while in custody here, and in custody in

24    Mexico seem to me that that should mitigate this sentence

25    somewhat.

M9F5graS

1          Again, I am not bound by the guidelines.  Looking at

2     the guidelines as they are, it very well may be that the

3     starting point for my analysis before giving any sort of

4     variance based on the conditions of confinement might be the

5     top of the guidelines or maybe even above that, but let me get

6     your sense of how it is that I should view that because it does

7     seem to me that that is something that needs to be considered.

8     And, it does seem to me that there is something that I should

9     pay very close attention to.  Obviously I am paying very close

10    attention to the trauma that has been inflicted on all of these

11    victims and the need for punishment and the need for general

12    deterrence, the need for specific deterrence, and the need to

13    promote respect for the law but let me hear the government's

14    view on that, on the conditions of confinement.

15          MS. KELLY:  So first, your Honor, with respect to the

16    conditions of confinement in Mexico, the government is not in

17    possession of independent information to either corroborate or

18    dispute the information put forward by defense counsel so we

19    are not going to take a position on that, we are not in a

20    position to take a position.

21          The government can agree, though, that the conditions

22    of confinement are a factor that are appropriately considered

23    by your Honor.  I think the question here is how to weigh that

24    against the other factors that you mention and all of the

25    3553(a) factors.  So, while the government agrees that it's an

M9F5graS

1    appropriate consideration I think here, on balance, given the

2    extreme heinousness of the crime, the defendant's role, the

3    impact on the victims, the need for general deterrence, the

4    need to promote respect for the law, just the depravity of the

5    conduct that we are talking about here which, respectfully,

6    even if taken as true, all of the allegations about the

7    conditions of confinement don't come close to the conditions

8    under which the defendant's victims lived for many years.

9           I think, on balance, the government's position is that

10   a guideline sentence is still warranted because of the full

11   weighing of those factors.

12          THE COURT:  OK.  Thank you.

13          MS. KELLY:  Thank you, your Honor.

14          THE COURT:  Mr. Granados Corona, I will give you an

15   opportunity to address me if you would like.  You don't have to

16   say anything, but if you would like to, I will give you that

17   opportunity now.

18          THE DEFENDANT:  Thank you for this opportunity that

19   you are giving me.

20          This act for me is very embarrassing.  During my life,

21   I have committed many mistakes.  I know that every human being

22   has their virtues and their defects and I think that we all

23   have the right to have a second chance.  There are so many

24   things that I can say to make me look good.  I just want to say

25   that all this time that I have spent in prison has been, for

1  me, a positive change.

2          Even before going to prison, I had been looking for

3  positive change.  When I got to prison, I found a way of

4  thinking, of acting, and of living that was different.  For the

5  long time I have lived I have tried to live a life in prison

6  looking for a positive change.  I have reconsidered every act

7  and I have tried to become a useful person, and I have tried to

8  have a very tight relationship, spiritual relationship, with

9  God.  It's not just me saying this, you can see my records.  I

10  have participated in biblical teachings in the jails where I

11  have been.  I have never had any fights in prisons during these

12  over six years.  Every day I have gathered groups in prison in

13  order to make conscious acts to prepare ourselves to

14  re-integrate into society.  I know there are many points that

15  make me seem as a bad person but in my heart there is no evil.

16          From the bottom of my heart, I would like to ask

17  forgiveness of this great nation.  I sincerely ask your

18  forgiveness, your Honor.  I ask forgiveness of Ms. Prosecutor

19  and all of those who are here present.  And, I request

20  forgiveness to the madams that I have offended.  My repentance

21  is from my heart.  Please, forgive me.  And I ask forgiveness

22  of my family for the shame and pain that I have caused them

23  with my acts.  I know this is a difficult process and I have

24  been through difficult situations during these six years, the

25  most difficult that a prisoner can go through.  Because of my

M9F5graS

1    case, I have been discriminated against at the jails.  And

2    because of this pandemic, this COVID-19 that we are going

3    through, I have lost many people close to me; I have lost a

4    brother.  And I was also in a difficult state.  I contracted

5    COVID.  So many things that we have gone through.  When I was

6    arrested in my country I was tortured for approximately five

7    hours.  And today I have to take medications nowadays in order

8    to be able to live a normal life.  And those are many of the

9    things we go through, consequences of the acts that we commit.

10         I am aware of the damage that I have caused. that I am

11   also aware to never do this again.  And, I feel prepared to be

12   able to serve for all of God's creations.  I request one more

13   time forgiveness of all.  Please, have compassion.  I know this

14   is a difficult act but from the bottom of my heart I am

15   remorseful and, like everyone else, I know that I have family

16   that needs me and that is waiting for me.  I promise, from the

17   bottom of my heart, never again to commit a bad act or cause

18   damage to any other person or any other nation.

19         That is all.  Thank you.

20         THE COURT:  Thank you.

21         I have a question for the defense and I will pose the

22   same question to the government.  The guideline range ranges

23   from, in terms of years, 19 years and seven months to 24 years

24   and five months.  I want to get counsel's view on -- again, I'm

25   required to avoid unwarranted sentencing disparities.

M9F5graS

Certainly I believe that there should be a disparity between

Mr. Granados Corona's sentence and the other people who have

been sentenced in this case, his sentence should be higher, his

sentence will be higher but, again, I am required to impose a

sentence that is sufficient but not greater than necessary to

meet the goals of sentencing and this case, obviously, cries

out for a high sentence to reflect punishment for the offense

and general, as well as specific, deterrence.

I want to hear from counsel briefly again about sort

of the appreciable difference other than just the math in some

of these ranges.  20 years, for example, sounds like a lot of

time and it is a lot of time, but 20 years sounds more like a

greater sentence than 19 years, more so than just that one year

of difference.  The difference between 20 and 19 sounds

different than the difference between 18 and 17 but, again, I

am required to impose a sentence that is sufficient but not

greater than necessary.

Let me get a sense from counsel on the appreciable

difference in term of the punishment for the offense, specific

and general deterrence, promoting respect for the law between,

say, 19 years and 20 years, for example.  Let me hear from the

defense and then I will hear from the government.

MR. MOSKOWITZ:  I understand the semantic difference

and the way it sounds.  All I can say, Judge, is for those of

us sitting on the outside, the difference between 19 and 20

M9F5graS

| | |
|---|---|
| 1 | years, other than the way it sounds, what's an extra year at |
| 2 | that level, so to speak, and it is easy to fall into that trap. |
| 3 | But, for those on the inside, every day is hellish, to put it |
| 4 | in no other way.  I would like to -- we would like to think |
| 5 | that prison can have a salutary effect and, in fact, |
| 6 | Mr. Granados Corona has made some use of his time in prison and |
| 7 | that's great.  But the reality is our prison system doesn't |
| 8 | rehabilitate people in any meaningful fashion in most cases. |
| 9 | That model -- maybe it used to be a model but it is not really |
| 10 | anymore.  We warehouse people, we don't give them any greater |
| 11 | skills when they get out, by and large, we are not doing |
| 12 | anything other than keeping them confined and there is a |
| 13 | reason -- and obviously in some cases maybe even in this case |
| 14 | there is a need for the deterrence, and the specific and both |
| 15 | general deterrence, but I think the Court should put aside the |
| 16 | way things sound and really focus on the reality that every |
| 17 | week, every month, certainly every year in prison, is very |
| 18 | difficult and, in many respects, torturous.  And for |
| 19 | Mr. Granados Corona, who is completely isolated because he is |
| 20 | not in his country and because his family can't come visit him, |
| 21 | certainly not on a regular basis -- he has no had visitors |
| 22 | since he has been here -- there is a big difference between 19 |
| 23 | and 20 years, even more than what it sounds like. |
| 24 | THE COURT:  OK.  Let me hear from the government. |
| 25 | MS. KELLY:  Your Honor, a few things to consider here. |

M9F5graS

1          I think we have talked about the defendant's role in

2     the organization and in the offense, and just to highlight a

3     few things that I think factor into how the defendant is

4     differently situated from the other defendants in the case who

5     have been sentenced, so this goes more to that rather than to

6     the specific difference between a 19-year sentence and 20.  As

7     I mentioned earlier, he is the only defendant who pled to a

8     15-year mandatory minimum, and part of the reason for that is

9     that it reflects his role in the offense and how much more

10     serious his conduct was than some of the other defendants in

11     the case.

12          There are three victims who he took responsibility for

13     as part of that plea.  There are other victims who are

14     mentioned in the impact statements that you received.  One of

15     the three victims covered by the plea agreement was a minor, so

16     he is one of the two defendants who have been sentenced,

17     including himself today, who have pled guilty to trafficking a

18     minor, and he pled guilty to trafficking by force, fraud, and

19     coercion, which is the most serious of the sex trafficking

20     offenses in the indictment.  So, he pled to the top charge in

21     the indictment, he pled to the most victims out of everyone who

22     has pled in the case, and I think that that is reflective of

23     his conduct and how he is differentiated from the other

24     defendants who have been sentenced thus far.

25          With regards to the length of the sentence here and

M9F5graS

1   what is going to be imposed today, for context, the defendant

2   is almost 47 years old, I think his birthday is coming up next

3   week.  So, even with a 20-year sentence, with credit for good

4   time, he would be 64 when he was released.  If you take it down

5   to a 15-year sentence, the mandatory minimum in this case, he

6   would be 59 and three quarters, so soon to be turning 60.  Now,

7   that might not seem like a huge difference but in terms of

8   specific deterrence it does matter because although he is

9   middle aged now, it is not that far away.  And the government's

10   concerns about him returning to the conduct that he was engaged

11   in remain true and I think are even more concerning if he is

12   released before he is 60.

13          Now, at some point we are just looking at numbers, we

14   are projecting, obviously this is speculation and we have no

15   certainties but, that said, given the length and the duration

16   of the defendant's conduct preceding his arrest in the

17   indictment and in this case and the general likelihood of

18   people in this business to return to it after being released

19   from prison, as well as the environment that he is going to

20   return to when he is deported which is a certainty, I think it

21   is a difference that is worth considering and whether 15 years

22   and his release when he is 59 is really sufficient to prevent

23   him from engaging in further conduct.

24          THE COURT:  OK.  Thank you.  I will be right back.

25          (Recess)

M9F5graS

| | |
|---|---|
| 1 | THE COURT:  Is there any reason why sentence should |
| 2 | not be imposed, counsel for the defense? |
| 3 | MR. MOSKOWITZ:  No, your Honor. |
| 4 | THE COURT:  Counsel for the government? |
| 5 | MS. KELLY:  No, your Honor. |
| 6 | THE COURT:  Mr. Granados Corona, are you satisfied |
| 7 | with your legal representation up to this point? |
| 8 | THE DEFENDANT:  Yes. |
| 9 | THE COURT:  I have the authority to depart from the |
| 10 | guidelines.  I have the authority to vary from the guidelines |
| 11 | as well and I have considered all the factors in 18 U.S.C. |
| 12 | 3553. |
| 13 | First, regarding restitution, I have a proposed order |
| 14 | of restitution.  What is the defense's view on this? |
| 15 | MR. MOSKOWITZ:  Your Honor, we are not going to object |
| 16 | to the proposed order. |
| 17 | THE COURT:  OK.  Then I will enter this proposed order |
| 18 | of restitution in the amount of $2,004,450.  In the incidence |
| 19 | the restitution does indicate victim's names, I will have that |
| 20 | filed under seal.  I will enter restitution in that amount. |
| 21 | What is the government's view on forfeiture? |
| 22 | MS. KELLY:  We are not requesting forfeiture, your |
| 23 | Honor. |
| 24 | THE COURT:  I will impose the $100 special assessment. |
| 25 | I will not impose a fine. |

M9F5graS

1          I also have before me a proposed order of judicial

2     removal.  There is a notice of intent to request judicial

3     removal.  There is also factual allegations in support of

4     judicial removal attached to this, as well as the defendant's

5     release statement in support of judicial removal, it is signed

6     today.

7          Mr. Granados Corona, did you sign this plea regarding

8     judicial removal today?

9          THE DEFENDANT:  Yes.

10          THE COURT:  And did you discuss this with your

11     attorney?

12          THE DEFENDANT:  Yes.  This is what was related to me

13     signing so that I would be deported immediately after I

14     finished doing my time.

15          THE COURT:  OK.  And do you consent to this order of

16     judicial removal?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Then I will sign the order of judicial

19     removal.

20          Regarding custody, the conduct in this case is

21     egregious.  The victims have endured severe trauma as a result

22     of Mr. Granados Corona's actions and there is a strong need for

23     punishment and a need to promote respect for the law and a need

24     for general and specific deterrence, and also a need to protect

25     the public.  Given those concerns, starting off at the top or

M9F5graS

1    even above the guideline range would be appropriate given the

2    conduct in this case.  However, Mr. Granados Corona has

3    suffered under extremely harsh circumstances and conditions of

4    confinement.  This is not to compare the suffering that he has

5    endured while confined to the extreme suffering that the

6    victims have endured but that's not -- what's important here is

7    conditions of confinement when he is in the criminal justice

8    system are supposed to be better than what he has endured.

9    What he has endured in Mexico and what he has endured here

10   under the COVID-19 pandemic, those conditions justify a

11   downward variance.  In addition, the fact that he is going to

12   be deported and has consented to a judicial order of removal

13   also justify the sentence that I am going to impose.  I am

14   considering the fact that he entered the judicial order of

15   removal as part of the basis for this sentence but the variance

16   in this case is confined to the conditions of confinement.

17           I am required to avoid unwarranted sentencing

18   disparities.  As the government has pointed out, there is a

19   disparity between his sentence and the sentence of his

20   co-defendants but that disparity is not unwarranted for all the

21   reasons laid out by the government.  I am required to impose a

22   sentence that is sufficient but not greater than necessary to

23   meet the goals of sentencing and this variance, regarding the

24   conditions of confinement, is in no way to be construed in any

25   way minimizing the trauma that the victims have suffered and I

M9F5graS

thank the victim for her written statement and for her

statement here today.  I know that that wasn't easy for her.  I

am going to impose a sentence slightly below the guideline

range, ever so slightly below the guideline range, and I will

impose a sentence of 228 months of custody.  That will be

followed by five years of supervised release.  Regarding the

conditions of supervised release -- and he is going to be

deported -- but in an abundance of caution I will impose

supervised release and these conditions, I will impose the

mandatory conditions as set forth in the presentence report, as

well as the standard conditions as set forth in the presentence

report.

Regarding special conditions, I impose a special

condition that he not have contact with the victims in this

case.  This includes any physical, visual, written, or

telephonic contact with such persons.  Additionally, he must

not cause or encourage anyone else to have contact with the

victims.  He must provide the probation officer with access to

any requested financial information.  He should be supervised

by the district of residence.  I will impose the search

condition as set forth in the presentence report.  He shall

submit his person and any property to a search by any United

States probation officer and, if needed, with the assistance of

any law enforcement.  Probation has requested a special

condition that he not have deliberate contact with any child

M9F5graS

1    under 18 years of age unless approved by the United States

2    probation office.

3            Let me hear from counsel on this.  What is the

4    government's view on that?

5            MS. KELLY:  The government has no dispute with the

6    imposition of that condition even though it probably will not

7    come to be, but given that the defendant pled guilty to an

8    offense that involved minors, it seems appropriate.

9            THE COURT:  Defense counsel?

10           MR. MOSKOWITZ:  Judge, I think it's a little difficult

11    to make that kind of blanket restriction.  Relatives, family

12    members, neighbors.  To say no contact with anybody under the

13    age of 18, first of all, I don't know that it is enforceable in

14    a meaningful way.  Second of all, I think it just sweeps too

15    broadly.  If he were to be in the United States it would still

16    seem too broad.

17           THE COURT:  The condition would give him the

18    opportunity to associate with minors with the approval of the

19    probation department, so probation could certainly approve any

20    contact with relatives and the like, neighbors and the like.  I

21    will, based on the circumstances of the offense, impose that

22    condition as well, that he must not have deliberate contact

23    with any child under 18 years of age unless approved by the

24    United States probation office.

25           He must not loiter within a hundred -- well, I think

M9F5graS

1    that that first part makes sense the second portion, not

2    loitering within a hundred feet of a place regularly frequented

3    by children under the age of 18 seems like that may be a little

4    difficult to actually monitor if he is in New York and he is

5    going to be deported, but what is the government's view on

6    that.

7            MS. KELLY:  We don't object to striking that portion,

8    your Honor.

9            THE COURT:  OK.  So, I will strike the rest of that

10   paragraph, the portion dealing within a hundred feet of places

11   regularly frequented by children under the age of 18 or

12   accessing any web profile of a user under the age of 18, etc.

13   So, the only part of that paragraph that I will impose is that

14   he must not have any deliberate contact with any child under

15   the age of 18, unless approved by the United States probation

16   office.

17           Again, if I didn't mention this already, I impose the

18   $100 special assessment.

19           Are there any open counts?

20           MS. KELLY:  We move to dismiss the underlying

21   indictment, your Honor.  So, he pled to the S2 indictment, so

22   the initial indictment and the S1 indictment can be dismissed.

23           THE COURT:  That is granted.

24           Is there anything else before I advise

25   Mr. Granados Corona of his statutory right to appeal, counsel

M9F5graS

1    for the defense?

2                MR. MOSKOWITZ:  Yes, your Honor.  Two matters.

3                Number one, I would ask that the Court, in its

4    judgment, make clear that Mr. Granados Corona should receive

5    credit for the time he spent in jail in Mexico because if the

6    Court doesn't say that that is -- that the sentence should run

7    from the time of his arrest, the Bureau of Prisons would not

8    necessarily calculate that time as counting towards his

9    sentence.

10               And secondly, I would ask that the Court recommend a

11   facility perhaps in Texas close to Mexico so that if his family

12   can enter the country legally they can come visit him.

13               THE COURT:  OK.  What is the government's view on

14   those requests?

15               MS. KELLY:  Your Honor, the defendant had not been

16   extradited when he was serving time or --

17               MR. MOSKOWITZ:  I'm sorry?

18               THE COURT:  Make sure you speak into the microphone so

19   defense can hear.

20               MS. KELLY:  The defendant had not been separated, he

21   did not consent to extradition, he was not brought here when he

22   was detained in the Mexican jail.  It is our intention that the

23   sentence imposed takes account for the fact that he did serve

24   time in Mexico but that he does not receive credit from that

25   sentence or that time served in Mexico.  That's my

M9F5graS

1    understanding of how BOP would calculate the sentence and we

2    don't think he should receive credit for time pre-extradition

3    in this case.

4              THE COURT:  Defense counsel?

5              MR. MOSKOWITZ:  Judge, if he is not receiving credit

6    for that time it is essentially an extra 18 months, so the

7    sentence then that the Court would be imposing would actually

8    be 246 months rather than 228 months.  I think it is about 18

9    months that he was in Mexico, picked up on this charge, but not

10   brought back to the United States yet.

11             THE COURT:  To be clear, what is it defense counsel is

12   asking me to do?

13             MR. MOSKOWITZ:  What I am asking the Court to put in

14   the judgment is that the 228 months begins from the date of his

15   arrest in Mexico so that he will receive credit for that time

16   against the sentence, because otherwise he will not.

17             MS. KELLY:  Your Honor, I am not sure that the Court

18   has authority to have that time credited to the defendant's

19   sentence and that has not been how the sentences have been

20   imposed for all of the other defendants in the case.

21             MR. MOSKOWITZ:  Judge, I have had many defendants from

22   foreign countries where the Judges have recognized that when

23   they're picked up on a United States warrant and not brought

24   here because of the bureaucracy and the procedures that have to

25   be followed, that that is part of the sentence.  It doesn't

M9F5graS

1    make any sense not to -- he was arrested on the United States

2    charges, which he was.  He didn't fight extradition, he just

3    wasn't brought here.  And, he is in prison on the United States

4    charges.  It takes time to bring him here, that should be part

5    of his sentence.

6         THE COURT:  Well, it is important that we get this

7    portion of the sentence correct and I think that we are going

8    to need to adjourn and have counsel look into this and have

9    counsel submit something within a week and we can see because,

10   again, I'm not sure off the top of my head everything that

11   counsel is saying is correct.  So, it may be that we need to

12   adjourn the sentencing without a date, have counsel submit

13   something, and then we can get back to this later.

14        What is counsel's view on that?

15        MS. KELLY:  I would make a suggestion, your Honor.  I

16   think it is appropriate for your Honor to consider whether to

17   provide credit in some fashion and to fashion a sentence

18   accordingly for that time spent in Mexican detention, meaning

19   that if you wanted to have him get credit and you did not

20   already take that into account in imposing the sentence, you

21   could subtract a certain amount of time from the sentence being

22   imposed.  And to clarify, what I was saying is that I don't

23   think there is authority to have BOP credit time spent that

24   wasn't part of the criminal process in the United States, which

25   doesn't start until he is extradited.

M9F5graS

1          To the extent your Honor wants authority or a letter

2     on that, whether you have the authority to do that, we can do

3     that, but I do think you would be able to impose sentence

4     today.

5          THE COURT:  All right.  Thank you.  Sorry, I didn't

6     mean to cut you off.

7          MS. KELLY:  That's fine, your Honor.

8          MR. MOSKOWITZ:  Judge?

9          THE COURT:  Hold on.  Hold on.  Hold on.  You might be

10     winning this, you may want to stop.

11          MR. MOSKOWITZ:  I'll stop.

12          MS. KELLY:  Your Honor, can I briefly -- our case

13     agent is in the room.  I want to clarify whether he was facing

14     charges in Mexico as well when he was arrested there.  Would

15     your Honor mind if I briefly asked our agent that question?

16          THE COURT:  OK.  And if you can, can you also verify

17     the date?

18          MS. KELLY:  That he was arrested?

19          THE COURT:  In Mexico, yes.

20          MS. KELLY:  OK.

21          (Counsel conferring)

22          MS. KELLY:  Your Honor, as stated in the PSR in

23     paragraph 20, the defendant was arrested in Mexico on October

24     26, 2016.  It is our understanding from the case agent that

25     there were not separate charges filed in Mexico at that time

M9F5graS

1    and the principal reason being that he had been charged in the

2    United States.  Of course, as described by both the victims and

3    in the PSR, there were many additional acts that occurred in

4    Mexico that were not encompassed in our indictment.

5        THE COURT:  OK.  And he was brought to the United

6    States on April 24, 2018; is that correct?

7        MS. KELLY:  That's correct, your Honor.  26th, your

8    Honor, April 26th.

9        THE COURT:  OK.  April 26th.

10       And it is the government's contention and the

11   defendant's contention that at this point he would not be

12   getting any credit in terms of his sentence here for the time

13   that he spent in Mexico, that approximate 18 months; is that

14   correct?

15       MS. KELLY:  That is correct, your Honor.  I think

16   whenever someone is arrested outside of the country, the time

17   before extradition is not credited towards their sentence.

18       THE COURT:  OK.  Then here is what I will do.  I will

19   modify the sentence to give him a lot of credit for the time

20   that he spent in Mexico due to the, again the nature of the

21   charges and the seriousness of the offense and the other things

22   that I have stated.  I am not going to give him credit for all

23   18 months in terms of the sentence, but I will credit him for

24   16 months of that 18 months and I will reduce his sentence to

25   212 months.  So, the variance is based on the conditions of

M9F5graS

| 1 | confinement that he has faced in Mexico and in the United |
| 2 | States, as well as the time that he spent in Mexico awaiting |
| 3 | extradition.  So, the sentence is 212 months of custody.  With |
| 4 | that correction, is there anything else before I advise |
| 5 | Mr. Granados Corona of his statutory right to appeal, counsel |
| 6 | for the government? |
| 7 | MS. KELLY:  Not from the government, your Honor. |
| 8 | THE COURT:  And I will make the recommendation |
| 9 | regarding a facility. |
| 10 | Anything else from the defense? |
| 11 | MR. MOSKOWITZ:  No, your Honor.  Thank you. |
| 12 | THE COURT:  Does the government have any objection to |
| 13 | me recommending the Bureau of Prisons incarcerate him in a |
| 14 | facility in Texas close to the Mexican border? |
| 15 | MS. KELLY:  No, your Honor. |
| 16 | THE COURT:  I will recommend that Mr. Granados Corona |
| 17 | be incarcerated in a facility in Texas close to the Mexican |
| 18 | border. |
| 19 | Mr. Granados Corona, you have a statutory right to |
| 20 | appeal.  Your time and ability to file notice of appeal, you |
| 21 | should talk to your lawyer about that.  If you cannot afford to |
| 22 | hire an attorney to have someone prosecute the appeal, the |
| 23 | Court will give you an attorney for free. |
| 24 | Do you understand? |
| 25 | THE DEFENDANT:  Yeah. |

M9F5graS

1                THE COURT:  OK.  We are adjourned.  Thank you.

2                                o0o